# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

MICHAEL MILLET                          CASE NO.  2:20-CV-00396

VERSUS                                  JUDGE JAMES D. CAIN, JR.

CITY OF LAKE CHARLES ET AL              MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 40) filed by Defendants, City of Lake Charles, Jared Hebert, Michael Wilson, John Loftin, John Thacker, Wilbert Ponthieux, David Smith, Curtis Manuel, Jeff Keenum, Chief Shawn Caldwell, and Former Chief Don Dixon, who move the Court for summary judgment in their favor to dismiss Plaintiff's claims at his costs.

## FACTUAL STATEMENT

On April 2, 2019, Cpl. Jared Hebert received a domestic abuse/violence complaint by Delisa Carroll concerning Plaintiff, Michael Millet.[1] Ms. Carroll reported that Mr. Millet struck her in the face that morning.[2] Ms. Carroll was asked and affirmed that she wanted to press charges.[3] Ms. Carroll was instructed to complete the appropriate paperwork and informed that Cpl. Hebert would follow her to her mother's house to get her car from Mr. Millet.[4]

---

[1] Defendant's exhibit A, Cpl. Heber deposition, p. 28:11-29:1.
[2] Defendant's exhibit S, Cpl. Hebert's body-camera, 15:02:20.
[3] Id. 15:02:30.
[4] Id. 15:02:45.

Ms. Carroll explained to Cpl. Hebert, Mr. Millet's physical abuse from the evening before and that he had prevented her from leaving.[5]  She also informed him that she was ultimately able to leave in his car.[6]

Cpl. Hebert followed Ms. Carroll to her mother's home to swap vehicles with Mr. Millet.[7] After their arrival, Mr. Millet arrived at Ms. Carroll's mother's home.[8] Mr. Millet appeared to be agitated as he exited the vehicle and handed Ms. Carroll's car key to Cpl. Hebert.[9] After a brief exchange between Cpl. Hebert and Mr. Millet, Cpl. Hebert asked Mr. Millet if he had an ID and instructed him to leave after the keys were exchanged.[10] Ms. Carroll explained that she left Mr. Millet's key in his car ignition.[11]

Mr. Millet began walking toward his vehicle, but stopped, turned around and looked at Ms. Carroll and put his fingers to the side of his head imitating a pistol, while at the same time making a threatening gesture to Ms. Carroll indicating that Ms. Carroll was trash.[12]

Cpl. Hebert again instructed Mr. Millet to leave. Mr. Millet got in his vehicle but quickly exited it and started arguing with Ms. Carroll about the smell of weed in his vehicle.[13] Again, Cpl. Hebert instructed Mr. Millet to leave. Mr. Millet got in his vehicle, but  again immediately exited it and started asking Ms. Carroll about his credit card and

---

[5] Defendant's exhibit A, Hebert deposition, p. 54:17-55:6; Defendant's exhibit S, 15:02:45.
[6] *Id.*
[7] Defendant's exhibit A, Hebert deposition, p. 29:24-30:10.
[8] Defendant's exhibit B, 15:40:17.
[9] Defendant's exhibit A, Hebert deposition, p. 30:1-10.
[10] Defendant's exhibit B, 15:40:15.
[11] *Id.* 15:40:56.
[12] Defendant's exhibit A, p. 30:12-32, Defendant's exhibit B, 15:41:05.
[13] Defendant's exhibit B, 15:41:20.

exclaimed he would not leave without it.[14] For the fourth time and again a fifth time, Cpl. Hebert instructed Mr. Millet to leave and deal with the credit card later.[15] Instead of leaving, Mr. Millet accused Ms. Carroll of stealing a ring from him, to which Cpl. Hebert instructed Mr. Millet to make a report with the police department.[16] Now, a sixth time Cpl. Hebert instructed Mr. Millett to leave.[17]

Refusing to leave, Mr. Millet informed Cpl. Hebert that he left his wallet and driver's license in the other car and that he would not leave without it.[18] As Mr. Millet began to walk toward Ms. Carroll, Cpl. Hebert stopped him and instructed him to stand at the front of his vehicle; Mr. Millet asked Cpl. Hebert to retrieve his wallet. Cpl. Hebert agreed to do so.[19] Cpl. Hebert then requested backup, after which he retrieved Mr. Millet's wallet and driver's license and began running Mr. Millet's driver's license through NCIC. While doing so, Mr. Millet opened his car door and began to dig around in the car. Due to safety concerns, Cpl. Hebert ordered Mr. Millet to get out of the car, shut the car door and put his hands on the hood of the vehicle.[20] After ordering Mr. Millet four times to put his hands on the hood of the vehicle, Cpl. Hebert ordered Mr. Millet three times to put his hands behind his back.[21] Mr. Millet refused. Cpl. Hebert then grabbed Mr. Millet's right wrist to handcuff him.[22]

---

[14] *Id.* 15:41:33.
[15] Defendant's exhibit A, Hebert deposition, pp. 29:24-30:10; Defendant's exhibit B, 15:42:00.
[16] *Id.* 15:42:08.
[17] Defendant's exhibit B, 15:42:25.
[18] Defendant's exhibit A, Hebert deposition, pp. 138:21-139:1, Defendant's exhibit B, 15:42:35.
[19] Defendant's exhibit B, 15:42:35.
[20] Defendant's exhibit B, 15:44:10.
[21] *Id.* 15:44:28.
[22] *Id.* 15L44:34.

Mr. Millet then spun around, so Cpl. Hebert took Mr. Millet to the ground and a struggle between the two ensued.[23]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most

---

[23] *Id.* 15:44:38; Defendant's exhibit A, pp. 32:10-34:3.

favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Mr. Millet maintains that Cpl. Hebert used excessive force to control him.[24] Counts I and II claim excessive force and/or false arrest/imprisonment under 42 U.S.C. § 1983.[25] Defendants maintain that Cpl. Hebert used reasonable force because Mr. Millet repeatedly refused to comply with Cpl. Hebert's commands.

To succeed in a § 1983 cause of action, the plaintiff must show they were deprived of a constitutional right by a person acting under color of state law. 42 U.S.C. § 1983.

The United States Supreme Court has made it clear that an excessive force complaint under 42 U.S.C. § 1983 is a federal constitutional claim that should be analyzed according to the Fourth Amendment "objective reasonableness" standards. *Graham v. Conner*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989). The Fourth Amendment protects the right to be free from excessive and objectively unreasonable use of force. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). A violation of this right occurs when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force. *Id.* at 628; *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). Excessive force claims are necessarily fact-

---

[24] Complaint, ¶ ¶ 40-42, Doc. 1.
[25] *Id.* ¶ ¶ 57-59, 63-65.

intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

A suspect actively resisting arrest is a factor to be analyzed from the perspective of a reasonable officer on the scene. The Supreme Court explained in *Graham* that "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* a 396-397. Officers are not required to avail themselves of the least intrusive alternative in responding to and making "split second judgments" in "tense, rapidly-evolving situations. *Id.* at 395.

*Qualified Immunity*

"A qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. *Drew v. Town of Church Point*, 2018 WL 1973247 (W.D. La. 2018) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). Qualified immunity is an "expression of policy designed to aid in the effective functioning of government" and recognizes that an officer acting reasonably may make a mistake and as a result acknowledges that "it is better to risk some error than not decide at all." *Sheuer v. Rhoades*, 416 U.S. 232, 94 S.Ct. 1683 (1959). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 106 S.Ct. 1092 (1986).

The doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). These interests combine to create an affirmative defense that shields public officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A two-fold inquiry is utilized to determine whether qualified immunity is applicable: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the officer's conduct was objectively reasonable. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998).

With respect to the first factor, a constitutional right "is clearly established if, in light of pre-existing law, the unlawfulness is apparent." *Id.* Even if the government officials' conduct violated a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez Ex. Rel. Hernandez v Texas of Protective and Regulatory Services*, 380 F.3d 872, 879 (5th Cir. 2004). Thus, the doctrine "shields an officer from suit when they make a decision that, even if constitutionally deficient, protects the officer from the hazy border between

excessive and acceptable force." *Brousseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596, 599 (2004), citing *Saucier v. Katy*, 533 U.S. 194, 206, 121 S.Ct. 2151.

In *Mangieri, supra*, the Fifth Circuit held that the objective reasonableness prong of qualified immunity analysis is a question of law properly addressed by the trial court in the context of summary relief, not the jury, stating that "a district court errs in 'holding that the objective reasonableness' prong of the qualified immunity standard is generally a factual question for the jury. See *Mangieri*, 29 F.3d at 1015-1016.

A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it from the defendant-movant to the plaintiff-non-movant to show that the defense is not available. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (quoting *Trant v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)).

Here, Cpl. Hebert attempted to keep the situation calm and peaceful on several occasions.  Instead of leaving peacefully, Mr. Millet escalated the situation by repeatedly refusing to leave after being commanded to do so by Cpl. Hebert. However, as noted by counsel for Plaintiff, as Mr. Millet's resistance dissipated, Cpl. Hebert's force to restrain should have equally dissipated. Summary judgment is inappropriate when the timing of the officer's force may or may not have corresponded to the timing of the suspect's resistance. For an officer's force to be reasonable, it must be commensurate with the suspect's level of contemporaneous, active resistance. *Curran v. Aleshire*, 800 F.3d 656 (5th Cir. 2015).

Relying on the body-cam video, Mr. Millet disputes Cpl. Hebert's perception of what transpired during the arrest. The Court has reviewed the numerous body-cam videos

and finds that there is a genuine issue of material fact for trial as to whether or not Cpl. Hebert is entitled to qualified immunity. As such, a jury will decide if Cpl. Hebert violated Mr. Millet's constitutional rights and used excessive force that was unreasonable.

*False arrest/imprisonment*

Mr. Millet has alleged in his Complaint claims of false arrest and/or imprisonment.[26] Mr. Millet will have to prove two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. *Fontenot v. Lavergne*, 365 So.2d 1168 (La.App. 3rd Cir. 1978), and "unlawful detention" is restraint without color of legal authority. *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977). If a person is arrested pursuant to statutory authority, there is no liability for damages for false imprisonment. *Id.* at 971. The burden is on a plaintiff to prove that the arrest was made without color of legal authority. *Cerna v. Rhodes*, 341 So.2d 1157, 1160 (La.App. 1st Cir. 1976), *writ denied,* 343 So.2d 1067 (La. 1977).

Mr. Millet claims he was wrongfully detained on April 2, 2019, because Cpl. Millet did not have probable cause to make an arrest.[27] Mr. Millet argues that the pat-down was warranted because of the possibility of a weapon based on Mr. Millet making the "gun" gesture to his head, followed by him searching for something in his car. However, when Cpl. Millet attempted to handcuff Mr. Millet for the pat-down search, Mr. Millet chose to be uncooperative.

---

[26] Complaint, ¶ ¶ 85-86, Doc. 1.
[27] Complaint, ¶ 17, Doc. 1.

Mr. Millet argues that a reasonable officer in Cpl. Hebert's position would not have perceived Mr. Millet as a threat to officer safety and would not have suspected that he possessed a dangerous weapon. Mr. Millet relies on his expert's report authored by Wayne Steve Thompson who opined that the level of resistance offered by Mr. Millet was, "at best, active resistance without assaultive actions."[28]

The Court has reviewed the entire body cam/video and finds that there is no genuine issue of fact for trial regarding Mr. Millet's claims of false arrest/imprisonment. Mr. Millet was repeatedly asked on multiple occasions to leave.  He refused to do so.  He made a hand gesture that this Court finds indicated that he was going to harm Ms. Carroll.   His repeated unsolicited derogatory comments continued to escalate the situation.   Finally, Cpl. Hebert, after repeatedly commanding Mr. Millet to leave, observed him searching for something in his car after he made the hand gesture.  Cpl. Hebert's split-second decision to perform a pat-down for safety was warranted, and Mr. Millet's continued non-compliance and resistance warranted the detainment.  As such, Mr. Millet's false arrest/imprisonment claims will be dismissed.

*Malicious prosecution*

Mr. Millet has asserted a claim for malicious prosecution against Cpl. Hebert, and Officers Wilson Loftin, Thacker, Ponthieux, Smith, Manual, Caldwell and other named defendants in violation of Louisiana Civil Code article 2315. Specifically, Mr. Millet alleges that these Defendants commenced a criminal proceeding against him by issuing a citation charging him with Resisting an Officer with Force or Violence and Battery on a

---

[28] Plaintiff's exhibit C-2, p. 3.

Police Officer.[29] The Calcasieu Parish District Attorney rejected the charge of Resisting an Officer with Force or Violence, and chose to charge Mr. Millet with Battery on a Police Officer.[30] Mr. Millet entered a plea of no contest to an amended charge of Resisting an Officer and was sentenced to 30-days unsupervised probation.[31]

To state a claim for malicious prosecution under Louisiana law, a plaintiff must allege: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against a plaintiff in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff." *Miller v. E. Baton Rouge Parish Sheriff's Dep't*, 511 So.2d 446, 452 (La. 1987).

Cpl. Hebert argues that Mr. Millet has offered no evidence of requisite malice or ulterior motive and therefore, cannot show malicious prosecution. Mr. Millet argues that because he was allowed by law to expunge the charge after sentencing that Mr. Millet is not considered to have been convicted of any crime. Thus, Mr. Millet suggests that the criminal proceedings against him were terminated in his favor.  Mr. Millet cites to no authority to support this contention, and this Court disagrees.

Mr. Millet argues that Cpl. Hebert's malice is self-evident and evinced by his unjustified, savage beating of Mr. Millet. The Court disagrees. Mr. Millet's conduct clearly evinced the fact that he resisted arrest.  Thus, Cpl. Hebert was justified by that

---

[29] Plaintiff's exhibit C-12, Citation No. AA345251.
[30] Plaintiff's exhibit C-13, Bill of Information, Docket No. 12478-19; see also La.R.S. § 14:34.2.
[31] Plaintiff's exhibit C-14.

fact alone to charge Mr. Millet for his misconduct. Furthermore, Mr. Millet entered a plea of no contest. The fact that he was able to expunge his record after being sentenced to probation is of no moment. The Court finds that there is no genuine issue of fact for trial as to Mr. Millet's malicious prosecution claim and will dismiss it.

*Discretionary immunity under state law*

Louisiana Revised Statute § 9:2798.1 states that the discretionary immunity protections afforded to public entities and their officers or employees for acts or omissions performed in the course and scope of their lawful powers and duties does not extend to "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. Louisiana Revised Statute § 9:2798.1(B)(C)(2).

Mr. Millet alleges state law battery and assault claims under state law.[32] Mr. Millet argues that the protections of § 9:2798.1(B) do not apply because the "acts" of misconduct (excessive force and cover-up) and the "omissions" (turning a blind eye) are not a legitimate governmental objective. Mr. Millet relies on the arguments he makes regarding qualified immunity under federal law, and argues that the motion for summary judgment should be denied as to state law immunity.

Defendants maintain that Cpl. Hebert's use of force was reasonable under the circumstances due to Mr. Millet's repeated refusal to comply with Cpl. Hebert's commands.

---

[32] Counts X and XII, ¶¶ 74-75, 78-79.

Where state law claims accompany a § 1983 action, the law enforcement officers are to be analyzed under the duty-risk formula, which obligates the plaintiff to (1) enunciate the duty owed to the plaintiff; (2) prove that the requisite duty was breached by the defendant; (3) prove that the conduct in question was a cause-in-fact of the resulting harm; and (4) prove that the risk of harm was within the scope of protection afforded by the duty breached.  A plaintiff's inability to establish any element results in determination of no liability. *Hardy v. Bowie*, 744 So.2d 606 (La. 1999).

The Louisiana Supreme Court has instructed that an officer's use of force must be evaluated against the actions of an ordinary man in the same position as the officer and with the same knowledge of the officer; the officer is not required to use the "best" or even the "better" method of handling a situation. The officer is required to choose a course of conduct which is reasonable under the circumstances. *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 322 (La. 1994).

In *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977), the Louisiana Supreme Court remarked that officers are not expected to act with the "same clarity of judgment in the calm atmosphere of home and office." *Kyle* enumerated seven (7) factors for the Court to consider that would demonstrate a reasonable and appropriate law enforcement response: (1) known character of the arrestee; (2) risks and dangers faced by officer; (3) nature of offenses involved; (4) chance of arrestee's escape; (5) alternative means/methods of arrest; (6) physical size, strength or weaponry of arrestee/officer; and (7) exigency of the moment.

Regarding these factors, Ms. Carroll had reported that Mr. Millet had been physically violent prompting her to leave and seek the police, Mr. Millet refused to comply with Cpl. Hebert's commands to leave, was agitated and argumentative, Mr. Millet was observed digging around in his vehicle after repeatedly being commanded to leave, Cpl. Hebert knew that back-up officers were unavailable at the moment, and Mr. Millet repeatedly refused to roll over to be restrained after being taken to the ground.

For the reasons set forth in the Court's analysis of Mr. Millet's § 1983 claim, the state law claims will be decided by a jury.

*Officers Wilson, Keenum, Loftin, Ponthieaux, Smith, Manuel and Thacker*

Mr. Millet has also sued Officers, Michael Wilson, John Loftin, John Thacker, Wilbert Ponthieux, David Smith, Curtis Manuel, and Jeff Keenum.  Mr. Millet alleges that Officers Wilson and Manuel, and perhaps other Defendants placed handcuffs on him and kept him detained.[33] Mr. Millet has asserted a claim for failure to intervene against Wilson, Loftin, Thacker, Ponthieux, Smith and Manuel,[34] false arrest/imprisonment under 42 U.S.C. § 1983 against Wilson, Loftin, Thacker, Ponthieux, and Smith.[35]

Defendants assert that Officers Wilson, Loftin, Thacker, Ponthieux and Smith arrived after Mr. Millet was handcuffed and the physical struggle to control combative suspect was complete and further note that he was sitting on the ground in handcuffs during their interaction.[36] Mr. Millet has presented no arguments and/or summary judgment evidence to create a genuine issue of material facts as to these claims against

---

[33] Complaint, ¶ 30, Doc. 1.
[34] *Id.* ¶ 46.
[35] *Id.* ¶ ¶ *63-65.*
[36] Defendants' exhibit B, Hebert bodycam video, 15:47:55.

Officers Wilson, Keenum, Loftin, Ponthieaux, Smith, Caldwell, and Thacker. Accordingly, there is no genuine issue of material fact as to these claims. As such, the claims against Defendants, Wilson, Keenum, Loftin, Ponthieaux, Smith, Caldwell, Manuel, and Thacker will be dismissed.

*Intentional infliction of emotional distress*

Defendants move to dismiss Mr. Millet's claims of intentional infliction of emotional distress. Mr. Millet maintains that he has suffered damages, including but not limited to, physical and mental pain and suffering, medical specials, embarrassment, loss of quality of life, and unnecessary attorney fees to defend himself for the baseless charges brought against him.

To recover for intentional infliction of emotional distress under Louisiana Civil Code article 2315, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991). The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of frights, humiliation, embarrassment, worry, or the like.  Liability arises only where the mental suffering or anguish is extreme.  *Restatement, supra, comment j, § 46.* See also *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559 (La. 1990).

Here, the Court will defer Mr. Millet's claim of intentional infliction of emotional distress to the merits at the trial of this matter. As such, the motion to dismiss this claim will be denied.

*Municipal liability*

Mr. Millet has asserted state law claims against the City of Lake Charles based on *respondeat superior.*[37] Mr. Millet also asserts 42 U.S.C. § 1983 liability against Chiefs Dixon and Caldwell and the City of Lake Charles through the Lake Charles Police Department ("LCPD").

Municipal liability under 42 U.S.C. § 1983 cannot be sustained under a theory of *respondeat superior,* and a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Official capacity suits are another way of pleading an action against an entity with which a law enforcement officer is an agent.  *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099 (1985). Suits against state officials in their official capacity therefore should be treated as suits against the State. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105.  Since the real party interest in an official-capacity suit is the governmental entity and not the named official "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.*

A municipality may be held liable if a policy, custom or practice is found as an independent basis for liability. *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Monell, supra.* Further, the policy must be

---

[37] Complaint, ¶ ¶ 89-90, Doc. 1.

established by a showing that the municipality's decision maker with final authority regarding the policy had issued a proclamation, policy, or edict or that a custom was established through a course of conduct by the practices of municipal officials which are so permanent or well-established so as to virtually constitute law. *Barcume v. City of Flint*, 819 F.Supp. 631 (E.D.Mich.1993).

For municipal liability to exist under the provisions of 42 U.S.C.A. § 1983, there must exist an affirmative link between the municipal policy and the alleged constitutional violation. The proof of a single act of unconstitutional activity is not sufficient unless proof of the incident also included proof that it was caused by an existing municipal policy. *Sivard v. Pulaski County*, 17 F.3d 185 (7th Cir.1994). To establish deliberate indifference for purposes of a § 1983 municipality liability claim, usually a plaintiff must show a pattern of similar violations. *Shumpert v. City of Tupelo*, 905 F.3d 310 (5th Cir. 2018).

The plaintiff's burden under *Monell* is a stringent one which forces the plaintiff to prove the municipality's inaction was taken with deliberate indifference so that the municipality disregarded the known or obvious consequence of its actions. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-389 (1989).

Mr. Millet argues that even though supervisors are required by policy to review incident reports and use of force reports, they neglect these duties by turning a blind eye to clear misconduct and fail to impose sufficient training and discipline. In addition, Mr.

Millet argues that officers selectively side-step evidence which might question whether use of force was justified, such as statements from suspects or objective witnesses.[38]

Mr. Millet made an IAD complaint against Officers Hebert and Wilson. Mr. Millet argues that the LCPD acted with deliberate indifference in investigating the April 2, 1019, incident at issue.[39]

Defendants remark that Mr. Millet's IAD complaint was received after the LCPD 30-day deadline, but that Chief Caldwell nevertheless ordered an investigation.[40] The investigation resulted in the exoneration of Officers Hebert and Wilson.[41] Defendants argue that Mr. Millet cannot demonstrate a pattern of deliberate indifference.

Mr. Millet posits that the LCPD has an organizational culture, custom, and pattern of condoning violations of citizens' constitutional rights. To create a genuine issue of fact, Mr. Millet submits summary judgment evidence of other instances of alleged inappropriate conduct by officers of the LCPD, namely officers Robert Hammac, Jared Hebert (Defendant herein), and Collin Kleckley.[42] For example, Officer Hammac was prosecuted in federal court for beating Gassdy Tovar.[43] Officer Hammac plead guilty, however the LCPD gave Officer Hammac only a 10-day suspension.  Mr. Millet remarks that Cpl. Hebert was also involved in that case and likewise plead guilty to a misdemeanor. Mr. Millet suggests that the LCPD did not discipline Mr. Hebert for his

---

[38] Plaintiff's exhibit B-8; Plaintiff's exhibit A-7, Sgt Benjamin Randolph, p. 77:2-20; Plaintiff's exhibit D-4.
[39] Complaint, ¶ 49, Doc. 1.
[40] Defendants' exhibit I, Lt. Richard Harrell deposition, pp. 52:22-56:25.
[41] Defendants' exhibit, IAD report.
[42] *United States v. Hammac*, Civ. Action 2:19-119; *United States v. Hebert*, Civil action 2:19-236, and *United States v. Kleckley*, Civil Action 2:19-253.
[43] Plaintiff's exhibit C-3.

role in the Tovar incident.[44] Mr. Hebert received the maximum punishment for a first offense—a 2-week suspension.[45] Mr. Millet argues that the lack of internal reporting and of supervisors failing to review and report this blatant incident is an indicator of the pattern and custom complained of in this lawsuit.

Mr. Millet relies on the expert report of Wayne Steve Thompson, Phd to show that the LCPD has a pattern of clearing their officers when they have violated the rights of persons and/or used excessive force. Those incidents involved Robert Hammac, Defendant, Jared Hebert, Officer Michael Treadway and victims Nicole Edwards, Todd Frank, Brian Andrus, Jonathan Carroll, and Hans Funk. Each of the incidents involved allegations of the use of excessive force, which resulted in the officers being exonerated, and/or a lawsuit was filed and settled.[46]

Mr. Millet also complains that the LCPD policy permits the Chief of Police to delegate authority to supervisors, Internal Affairs ("IA"), and individual officers as to certain violations, which in turn makes those supervisors and/or administrators "decision-makers." Consequently, he remarks that the aggregate of these practices or customs systematically limit transparency and accountability at every stage and works to the benefit of bad actors within the LCPD. In addition, Mr. Millet complains that the LCPD waters down reports, condone excessive force, officers lie to protect one another, and the IA refuses to see what it should have seen under the guise of deniability.

---

[44] Plaintiff's exhibits C-2 and C-3; Plaintiff's exhibit A-4, Lt. Harrell deposition, p. 97:3-6.
[45] Defendants' exhibit I, pp, 75:6-76:10.
[46] Plaintiff's exhibit C-3.

As noted above, both Officers Hammac, Kileckley, and Hebert plead guilty to the charge of deprivation of rights under color of law as to their respective roles in the Tovar incident.  Mr. Millet argues that even though there were several officers at the scene, the Calcasieu Parish District Attorney had to bring the misconduct to the attention of Chief Dixon and IA. Thus, the lack of internal reporting and of supervisors failing to review and report the incident is an indicator of the pattern and custom complained of herein.

Mr. Millet uses the Tovar incident as an example of LCPD administrators tolerating and condoning police misconduct. Mr. Millet notes that Officer Ponthieux reported to IA that Cpl. Hebert struck Tovar 6-7 times, but Cpl. Hebert later admitted that he actually hit Tovar 20-30 times. Mr. Millet explains that this provides a pattern and custom of tolerating and condoning police misconduct.

Mr. Millet remarks that IA improperly cleared officers of misconduct in excessive force cases and failed to censure officers from using escalation tactics and verbal misconduct. Mr. Millet supports this conclusion with the deposition testimony of Lt. Harrell,[47]  and body or dash cam videos by Officers Hebert, Thacker McNeeley and Treadway regarding two separate arrests.[48]

Mr. Millet also relies on other lawsuits filed against the LCPD, involving Nicole Edwards, Todd Frank, Jonathan Carroll, Brian Andrus and Hans Funk. Defendants note that the lawsuit filed by Todd Frank was dismissed via a summary judgment motion, and the suits by Edwards and Carroll involved an attack by a LCPD K9, which were settled.

---

[47] Plaintiff's exhibit A-4 lt. Richard Harrell, pp.81:6-16; 97:3-6.
[48] Plaintiff's exhibits B-2 at 15:48:42; Plaintiff's exhibit B-6 at 00:59:39; Plaintiff's exhibit B-9; Plaintiff's exhibit B-11 at 01:20:55.

Michael Treadway was reported by LCPD officers to have choked Brian Andrus, but Treadway was cleared. The incident concerning Funk involved a torturous tactic of hand cuff and arm leverage.

Here, Mr. Millet complains that none of the officers filed complaints, and supervisors disregarded what Mr. Millet suggests was clear evidence of police brutality. Mr. Millet remarks that the officers failed to take Mr. Millet's statement and that of an eye witness Toni Henry, who observed the incident from across the street. Furthermore, there was no IA investigation until counsel for Mr. Millet wrote Chief Caldwell persuading him to order an investigation.

Mr. Millet also complains that Officer Ponthieux mischaracterized the incident as a "full blown fist fight".[49] Additionally, officers took Cpl. Hebert's word despite the disparity in injuries to Mr. Millet compared to Cpl. Hebert.

Finally, Mr. Millet submits a table concerning multiple IAD investigations involving (1) camera usage, (2) conduct unbecoming, and (3) use of force.[50] The purpose of the table is to show that the LCPD was and/or is deliberately indifferent towards officer discipline. Of the 17 IAD investigations cited, ten (10) charges were sustained, six (6) charges were exonerated, and one (1) charge was withdrawn.

A plaintiff's burden in *Monell* is a stringent one which forces the plaintiff to prove the municipality's inaction was taken with deliberate indifference so that the municipality

---

[49] Plaintiff's exhibit A-5, Deposition of Sgt. Wilbert Pontieaux, p. 63:11-18, 114:1-115:6.
[50] Docs. 56-22,23.

disregarded the known or obvious consequence of its actions. *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 388-389 (1989).

Defendants also note that the LCPD self-reported the Hammac incident to the FBI, which resulted in a federal prosecution. An isolated unconstitutional action by municipal employees will almost never trigger liability.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Plaintiff must show a clear pattern of similar violations. *Shumpert v. City of Tupelo*, 905 F.3d 310 (5th Cir. 2018).

While the Court has denied Defendants' motion for summary judgment as to Defendants' qualified immunity, the summary judgment evidence submitted to sustain Mr. Millet's municipality liability is lacking.  The Court finds that the summary judgment evidence submitted does not show that the LCPD had a custom or policy of being deliberately indifferent regarding Mr. Millet's municipality liability claim.

## CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment (Doc. 40) filed by Defendants, City of Lake Charles, Jared Hebert, Michael Wilson, John Loftin, John Thacker, Wilbert Ponthieux, David Smith, Curtis Manuel, Jeff Keenum, Chief Shawn Caldwell, and Former Chief Don Dixon will be granted in part and denied in part. The Motion for Summary Judgment will be denied as to Cpl. Hebert's qualified immunity and discretionary immunity under state law concerning Mr. Millet's use of excessive force claim.  The Motion for Summary Judgment will be granted as to Mr. Millet's false arrest/imprisonment.  The Motion for Summary Judgment will be granted as to Mr. Millet's malicious prosecution claim.  The Motion for Summary Judgment will be

granted as to Mr. Millet's claims of failure to intervene against Wilson, Loftin, Thacker, Ponthieux, Smith and Manuel,[51] and false arrest/imprisonment under 42 U.S.C. § 1983 against Wilson, Loftin, Thacker, Ponthieux, and Smith. The Motion for Summary Judgment will be deferred to the merits as to Mr. Millet's claim of intentional infliction of emotional distress and granted as to Mr. Millet's claim of municipal liability against Police Chiefs Dixon and Caldwell and the City of Lake Charles.

**THUS DONE AND SIGNED** in Chambers on this 18th day of April 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[51] *Id.* ¶ 46.